(77 P.3d 1283)

No. 89,558

STEPANKA MAGSTADTOVA, *Appellee*, v. THOMAS MAGSTADT, *Appellant*.

—

Opinion filed October 24, 2003.

*William J. Paprota*, of Overland Park, for the appellant.

*Ronald W. Nelson*, of Nelson & Booth, of Overland Park, for the appellee.

Before PIERRON P.J., MALONE and GREENE, JJ.

PIERRON, J.: Thomas Magstadt appeals from the district court's judgment ordering him to pay attorney fees and costs to Stepanka Magstadtova under the International Child Abduction Remedies Act (ICARA), 42 U.S.C. § 11601 *et seq.* (2000). We affirm.

On July 27, 2001, Stepanka filed a petition under the Hague Convention on the Civil Aspects of International Child Abduction (the Convention), Oct. 25, 1980, T.I.A.S. No. 11,670, 1343 U.N.T.S. 89; see 53 Fed. Reg. 30637 (1988), and the ICARA, 42 U.S.C. § 11601 *et seq.* Stepanka alleged she was the mother of Michael Magstadt, then 10 years old, and that she had rights to custody of Michael based on an order issued by a court in the Czech Republic. Stepanka further alleged Michael had been a habitual resident of the Czech Republic but had been wrongfully removed from there by his father Thomas. At the time the petition was filed, Michael was located in Johnson County, Kansas. Stepanka requested the immediate return of Michael and requested attorney fees, costs, and expenses incurred due to Michael's wrongful removal.

A hearing was held on August 10, 2001. That same date, the district court issued an order under the Convention and the ICARA returning custody of Michael to Stepanka and ordering his return to the Czech Republic. A separate journal entry, filed August 22, 2001, found that Stepanka had proven by a preponderance of the evidence that Michael was wrongfully removed from his habitual residence within the meaning of the Convention and the ICARA. The court rejected Thomas' argument that Michael was old enough to object to returning to the Czech Republic and that grave harm would occur if he was returned.

On or about April 23, 2002, nearly 9 months after the trial on the merits, Stepanka filed a motion for assessment of costs and attorney fees under the original case number. A hearing was held on July 21, 2002. Stepanka requested $9,489 in attorney fees, $237 in other attorney expenses, $225 for hotel expense, travel expenses of $664.30, and car rental fees of $759. Thomas advised the court that his defense was purely a procedural one based on res judicata. Thomas did not take issue with the fees documented by Stepanka but objected to the receipts for her expenses as she was not present to be cross-examined about them. The district court directed the parties to file briefs on the res judicata issue and took the matter under advisement.

Thereafter, Thomas filed a motion to dismiss the attorney fees motion. Thomas argued that the August 2001 order was final, the court had not reserved jurisdiction, and the matter was barred by res judicata. Stepanka filed a response which is not included in the record on appeal.

In a memorandum opinion filed on August 2, 2002, the district court awarded Stepanka $10,585.79 in costs, attorney fees, and travel expenses. The court rejected Thomas' res judicata defense. The court noted the original hearing was very emotional for everyone, including the court, and the matter of fees and costs was simply overlooked in the "highly charged emotional atmosphere." Relying on *Snodgrass v. State Farm Mut. Auto. Ins. Co.*, 246 Kan. 371, 789 P.2d 211 (1990), and *Moritz Implement Co. v. Matthews*, 265 Kan. 179, 189-90, 959 P.2d 886 (1998), the court held that it

was proper to award attorney fees within a reasonable time after judgment was entered. A journal entry was subsequently filed.

On appeal, Thomas raises only one issue. He contends the district court lacked subject matter jurisdiction to award Stepanka attorney fees and costs because the motion for fees and costs was filed a number of months after the final journal entry on the merits of the case. Thomas argues that because Stepanka could have presented evidence on fees and costs in the original ICARA proceedings, the judgment in that case is res judicata to the present matter.

Application of res judicata is a question of law over which an appellate court has plenary review. *Grimmett v. S & W Auto Sales Co.*, 26 Kan. App. 2d 482, 485, 988 P.2d 755 (1999). Res judicata prevents relitigation of previously litigated claims and consists of the following four elements: (1) same claim; (2) same parties; (3) claims were or could have been raised; and (4) a final judgment on the merits. *Winston v. Kansas Dept. of SRS*, 274 Kan. 396, 413, 49 P.3d 1274, *cert. denied* 537 U.S. 1088 (2002).

However, the issue of the relationship between requests for attorney fees and the merits of a civil proceeding has always been a troublesome matter. In *Snodgrass*, State Farm appealed from a jury verdict finding it wrongfully denied insurance coverage to someone involved in an accident with Snodgrass. After State Farm filed its notice of appeal, the plaintiff filed a motion for attorney fees and costs under K.S.A. 40-256. This court issued an order to show cause and dismissed the appeal, concluding the pending motion for attorney fees and costs rendered the judgment nonfinal and nonappealable.

The Kansas Supreme Court reversed, finding that a motion or request for attorney fees alleged in the petition was not a part of the merits of the case. Rather, the court found such fees have been regarded as costs awarded to the prevailing party. Accordingly, the pending motion did not render the judgment nonfinal. 246 Kan. at 373-74.

Thomas cites *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 100 L. Ed. 2d 178, 108 S. Ct. 1717 (1988), for the proposition that requests for attorney fees should be treated as part of the merits of the case, rather than an ancillary matter, when the party specif-

ically requests attorney fees as part of the prayer of the complaint. Significantly, *Budinich*, like *Snodgrass*, clearly was limited to the question of whether there was a final judgment for purposes of appeal; it did not deal with the question of whether a decision on the merits stands as res judicata to a subsequent request for attorney fees. While the Court in *Budinich* recognized some variance in how courts treat statutory attorney fee provisions—ancillary or part of the merits—the *Budinich* Court expressly refused to make such a distinction for purposes of determining whether an order was "final" for purposes of appeal. 486 U.S. at 201-02.

In *Snodgrass*, our Supreme Court adopted the rationale of *Budinich* and held a decision on the merits is final *for the purposes of appeal* even if a request or motion for attorney fees attributable to the case has not yet been determined. 246 Kan. at 374. Our Supreme Court specifically cited that part of *Budinich*, stating:

> "The United States Supreme Court recognized that attorney fees could be distinguished between those requested pursuant to statutes, which may cause them to be *part of the merits relief*, and those specifying that they are to be taxed and collected as costs. 486 U.S. at 201. But the Court, emphasizing the need for reserving operational consistency and predictability in the overall application of [28 U.S.C.] § 1291 [1982], concluded:
> 'The time of appealability, having jurisdictional consequences, should above all be clear. We are not inclined to adopt a disposition that requires the merits or nonmerits status of each attorney's fee provision to be clearly established before the time to appeal can be clearly known. Courts and litigants are best served by the bright-line rule, which accords with traditional understanding, that a decision on the merits is a "final decision" for the purposes of § 1291 whether or not there remains for adjudication a request for attorney's fees attributable to the case.' [Citation omitted.]" 246 Kan. at 375-76.

*Budinich* and *Snodgrass* provide little assistance to the present issue—if the order on the merits was final despite the unresolved claim for attorney fees and costs, does the order on the merits bar a subsequent request for such fees? Our Supreme Court appeared to address a similar issue in *Moritz Implement*, 265 Kan. 179.

The *Moritz Implement* court was primarily faced with deciding who was entitled to crops growing upon real property sold in a foreclosure proceeding. After the foreclosure sale, the company sought to confirm the sale; it also asked for assessment of attorney

fees. On appeal, other parties argued the trial court could not award attorney fees because they were not mentioned in the foreclosure judgment. These parties also cited the doctrine of merger as a basis to challenge the attorney fees award. The Supreme Court held that even though the original judgment did not specifically set forth an amount due for attorney fees, this did not prevent the parties from adjudicating the amount to be awarded at the time when the fees can be properly and finally assessed. 265 Kan at 190.

Moreover, this court has recognized a difference between a "final judgment" for appeal purposes and a "final judgment" for purposes of applying res judicata.

"A distinction can be made for different definitions for the finality requirement based upon public policy considerations that support res judicata and the single appeal rule. Res judicata is intended to protect parties from the cost and vexation of multiple suits on the same claim. The single appeal rule, on the other hand, was designed to discourage the piecemeal review of an action. Because the underlying purposes of the two are vastly different, finality need not be defined the same for both." *Grimmett*, 26 Kan. App. 2d at 487-88.

In *Grimmett*, the plaintiff sued S&W for negligence. The trial court granted S&W's motion for summary judgment but then granted plaintiff's motion to voluntarily dismiss. Shortly thereafter, plaintiff filed an identical suit against S&W and others arising from the same accident. S&W then moved to dismiss the second case based on res judicata. This court held the preclusion doctrine barred plaintiff's second case, even though the first case had been voluntarily dismissed after summary judgment was entered. 26 Kan. App. 2d at 487-88. Thus, even though the case was not final for appeal purposes, the entry of summary judgment was sufficiently final for res judicata purposes.

Thomas cites two cases, *Levesque v. Levesque*, 816 F. Supp. 662 (D. Kan. 1993), and *Sampson v. Sampson*, 267 Kan. 175, 975 P.2d 1211 (1999), in support of his claim that a request for fees under ICARA goes to the merits of a claim rather than being an ancillary issue. Both *Levesque* and *Sampson* involved actions under ICARA in which the court allowed an award of attorney fees and costs in its original order. See *Levesque*, 816 F. Supp. at 666; *Sampson*, 267 Kan. at 180. See also *Dalmasso v. Dalmasso*, 269 Kan. 752,

765-66, 9 P.3d 551 (2000) ( attorney fees assessed in original order on merits).

However, none of these cases held that evidence of attorney fees must be presented at the hearing on the merits or that it must be included in the original judgment or be forever barred. Nor should these cases be read to reflect such a requirement. Instead, the courts simply followed our "better practice" standard. Both *Snodgrass* and *Moritz Implement* recognized that better practice would be to delay issuing the judgment on the merits until the attorney fees issues were resolved. However, failure to wait did not preclude the allowance of attorney fees. *Moritz Implement*, 265 Kan. at 190; *Snodgrass*, 246 Kan. at 377-78.

In contrast, Stepanka cites *White v. New Hampshire Dept. of Empl. Sec.*, 455 U.S. 445, 71 L. Ed. 2d 325, 102 S. Ct. 1162 (1982). Again, this case is not quite on point. In *White*, the Supreme Court held that a motion for attorney fees is not like a motion to alter or amend a judgment and was not required to be filed within the 10-day time period allowed for such motions under Federal Rule of Civil Procedure 59(e). The Supreme Court noted that a motion for attorney fees " 'does not imply a change in the judgment, but merely seeks what is due because of the judgment It is, therefore, not governed by the provisions of Rule 59(e).' [Citation omitted.]" 455 U.S. at 452. Moreover, the *White* Court noted that attorney fees under 42 U.S.C. § 1988 were available only to a prevailing party; thus, an inquiry about attorney fees "cannot even commence until one party has 'prevailed.' " 455 U.S. at 451-52.

Other courts have willingly considered motions for attorney fees filed after the decision on the merits in actions under ICARA. See, e.g., *Distler v. Distler*, 26 F. Supp. 2d 723 (D. N.J. 1998); *Freier v. Freier*, 985 F. Supp. 710 (E.D. Mich. 1997); *Berendsen v. Nichols*, 938 F. Supp. 737 (D. Kan. 1996). While the parties apparently did not challenge the timing of the motions in these cases, the courts also did not raise any concern about the attorney fees being decided after the merits.

While the state of the law is not crystal clear, it is apparent from *Snodgrass* and *Moritz Implement* that a request for attorney fees permitted to prevailing parties under state statutes are treated as

collateral matters that routinely are considered after a decision on the merits. While both cases encourage avoiding piecemeal litigation by holding the judgment on the merits until the attorney fee issue is decided, that is somewhat more difficult in an ICARA proceeding.

First, attorney fees and costs are assessed under ICARA only if the court orders the return of a child. 42 U.S.C. § 11607(b)(3) (2000). Therefore, attorney fees do not become relevant until a decision on the merits is made. Moreover, the stated purpose of ICARA was to ensure the "prompt" return of children wrongfully removed. 42 U.S.C. § 11601(a)(4) (2000). Delaying the final entry of judgment in an ICARA proceeding in order to determine the attorney fee issue is contrary to the expedited nature of these cases.

We do note the possibility of potential unfairness if the party requesting costs and fees leaves the country and may not be subject to the full extent of fact finding allowed under our laws. Trial courts must be careful to assure fairness in the process of determining fees and costs. However, in the instant case, the attorney fees and other attorney expenses are $9,736 and the travel expenses are $1,648.30. The attorney fees are not challenged and the travel expenses, on their face, do not appear to be unreasonable. We find no abuse of discretion on the part of the district court.

The doctrine of res judicata or claim preclusion rests upon considerations of economy of judicial time and public policy favoring establishment of certainty in legal relations. *Stanfield v. Osborne Industries, Inc.*, 263 Kan. 388, 397, 949 P.2d 602 (1997), *cert. denied* 525 U.S. 831 (1998). Weighing the policy of prompt determination of the merits in ICARA cases seems to outweigh any public policies underlying the concept of res judicata that might apply in this case. Also, as noted above, attorney fees are often something that can be determined after a final judgment is entered on the merits.

Affirmed.