(96 P.3d 687)
No. 90,332

MICHAEL E. DAVIN, *Appellant,* v. ATHLETIC CLUB OF OVERLAND PARK and T. SEAN LANCE, *Defendants,* and STATE FARM FIRE AND CASUALTY COMPANY, *Appellee.*

Opinion filed September 3, 2004.

*David Rauzi* and *Dennis Owens,* of Kansas City, Missouri, for appellant.

*Casey O. Housley* and *Adam J. Prochaska,* of Armstrong Teasdale, LLP, of Kansas City, Missouri, for appellee.

Before MARQUARDT, P.J., MALONE, J., and ERIC S. ROSEN, District Judge, assigned.

ROSEN, J.: Michael E. Davin appeals the trial court's grant of State Farm Fire & Casualty Company's (State Farm) motion for judgment as a matter of law. We affirm.

Davin was injured while playing basketball with T. Sean Lance at the Athletic Club of Overland Park on January 14, 1999. Lance claimed that Davin grabbed him by the arms and held him with both hands. In response, Lance picked Davin up between the legs, lifted him about 5 feet off the ground, turned him, and dropped him headfirst on the floor. Davin landed on his right shoulder and head. The fall knocked Davin unconscious, and he was taken to the hospital, where he was diagnosed with a separated shoulder. Davin had one unsuccessful surgery and another operation 6 months later.

Davin made a living in investments and insurance. As a result of the injury, he claimed that he lost significant business opportunities. After many months of physical therapy, he still has problems with his right shoulder. Davin sued Lance for battery and negligence and sought compensation for his medical expenses and lost wages.

At the time Davin's injuries occurred, Lance was insured by State Farm under a homeowner's insurance policy. The insurance policy provided indemnity for Lance's liability for bodily injury or property damage caused by an "occurrence." State Farm hired an attorney to represent Lance under a reservation of rights. Lance also hired his own personal attorney.

Against the advice of the attorney State Farm hired to represent Lance, Lance entered into an agreement with Davin whereby Lance would waive a jury trial and consent to Davin taking judgment against him for $300,000. The agreement stated that the "parties are desirous of entering into an agreement, so that the assets of Sean Lance will be protected from judgment." In exchange, Lance agreed to a consent judgment that he would not: (1) move to set aside the judgment; (2) appeal the judgment; and (3) take any action to avoid the judgment. Pursuant to the stipulated judgment, the trial court entered judgment against Lance for $300,000 plus court costs.

Davin brought a garnishment action against State Farm for the $300,000 limit of Lance's homeowner's policy. Davin and State Farm filed cross-motions for summary judgment on the issue of policy coverage. The trial court denied Davin's motion for sum-

mary judgment and granted State Farm's motion, finding that a trial was necessary in order to determine whether State Farm had a duty to indemnify Lance.

On September 3, 2002, the trial court heard evidence and ruled that Davin's claim was excluded under the State Farm policy. The trial court granted State Farm's motion for judgment as a matter of law. Davin timely appeals.

The standard of review on an appeal from a judgment as a matter of law is:

" 'When ruling on a motion for directed verdict, the trial court is required to resolve all facts and inferences reasonably to be drawn from the evidence in favor of the party against whom the ruling is sought. Where reasonable minds could reach different conclusions based on the evidence, the motion must be denied.' [Citation omitted.]" *Wilkinson v. Shoney's, Inc.*, 269 Kan. 194, 202, 4 P.3d 1149 (2000).

Davin first contends that the law of the case doctrine and collateral estoppel prevent State Farm from relitigating the issue of whether Lance was negligent. He claims that this issue was previously determined. The law of the case doctrine is a discretionary policy which allows the court to refuse to reopen a matter already decided, without limiting its power to do so. The doctrine is applied to avoid relitigation of an issue, to obtain consistent results in the same litigation, and to afford a single opportunity for argument and decision of the issue. *Bichelmeyer Meats v. Atlantic Ins. Co.*, 30 Kan. App. 2d. 458, Syl. ¶ 2, 42 P.3d 1191 (2001).

Similarly, under collateral estoppel, once a court has decided an issue of fact or law, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case. Under Kansas law, three factors must be present in order for collateral estoppel to apply: First, the suit must have proceeded to a final judgment on the merits, second, the parties must be the same or in privity, and third, the fact at issue must have been directly determined by a court of competent jurisdiction as a ground of recovery. See *Grimmett v. S&W Auto Sales Co.*, 26 Kan. App. 2d 482, 487, 988 P.2d 755 (1999).

Reservation of Rights

State Farm argues that its reservation of rights in representing Lance preserved its right to litigate the question of coverage at a

later time. Kansas law requires an insurer to provide a defense to an insured if there is a potential for liability under the policy. *State Farm Fire & Casualty Co. v. Finney*, 244 Kan. 545, 553, 770 P.2d 460 (1989). An insurer may use a reservation of rights in order to represent the insured while still preserving its claim of noncoverage until after the underlying tort suit is decided. Kansas courts have determined that the insurer is then allowed to relitigate the plaintiff's claim and have the issue of coverage under the policy determined by the court as a matter of law. *Finney*, 244 Kan. at 547.

In *Finney*, the insured negligently shot and injured the plaintiff. The insurer disclaimed liability under the intentional acts exclusion and filed a declaratory judgment action claiming that there was no coverage under the policy and that it had no duty to defend the insured. The insured asked for a stay, pending the outcome of the civil tort suit. The insurer objected, claiming that a judgment in the civil suit would bar the defense of no liability. The court held that the insurance company was not collaterally estopped from asserting its policy defenses. 244 Kan. at 546-47, 554. The court cited *Bell v. Tilton*, 234 Kan. 461, 674 P.2d 468 (1983), where the court held that when an insurance company provides an attorney to defend its insured against a pending action while reserving its policy defenses, the defense of the action does not estop the insurance company from asserting its policy defenses in a subsequent civil proceeding. *Finney*, 244 Kan. 545 Syl. ¶ 1.

Since State Farm represented Lance under a reservation of rights, the trial court correctly allowed State Farm to relitigate the facts of Davin's case to determine whether coverage existed under State Farm's policy.

## Collateral Estoppel

State Farm argues that the factors required for collateral estoppel, as discussed in *Grimmett*, have not been met in this case. We agree.

### Previous Party

Davin argues that collateral estoppel should have applied because State Farm participated in all phases of the initial litigation.

State Farm was not a party to the original action, and there is no evidence in the record on appeal showing any direct involvement by State Farm in that case. While it is not uncommon for an insurance company to be found in privity with its insured, in the instant case, State Farm hired an attorney to defend Lance under a reservation of rights. By doing so, State Farm severed any privity between Lance and itself. State Farm had no interest in the case when Lance entered the consent agreement with Davin against the advice of counsel.

*Issue Not Previously Litigated*

On November 7, 2000, the trial court resolved the issue of fault, determining that Lance's negligence was the cause of Davin's injuries. State Farm was not a party to the action. The issue of whether the State Farm policy provided coverage for the consent judgment was not in front of the trial court until the garnishment action was filed.

It is clear that the definition of a "negligent occurrence" and the specific exclusions to that term listed in State Farm's policy could be different than the common-law definition of negligence that was applied in the original negligence action. The trial court in the garnishment action had to decide whether the definition of "negligent occurrence" and exclusions to the term in State Farm's policy covered Davin's injuries.

Both the law of the case doctrine and collateral estoppel require that the issue had been determined by the trial court before the issue will be barred from litigation in a subsequent action. Here, the issue of coverage was not an issue in the first trial, State Farm was not barred from raising the issue in the subsequent garnishment action, nor was it error for the trial court to determine the issue of coverage. We find that the precedent in *Finney* and *Bell* are relevant and persuasive on this issue.

Parties to litigation cannot concoct a scheme agreeing to a declaration of negligence and a $300,000 judgment and then expect the insurance company to be bound by that agreement without being able to defend itself against the liability. As such, it was not

error for the trial court to consider the issue of liability in the subsequent garnishment action.

Next, Davin argues that the trial court erred by finding that Lance intentionally caused Davin's injuries. The function of an appellate court is to determine whether the trial court's findings of fact are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law. Substantial evidence is such legal and relevant evidence as a reasonable person might accept as sufficient to support a conclusion. See *Unrau v. Kidron Bethel Retirement Services, Inc.*, 271 Kan. 743, 747, 27 P.3d 1 (2001). The court does not weigh conflicting evidence, pass on credibility of witnesses, or redetermine questions of fact. *State ex rel. Stovall v. Meneley*, 271 Kan. 355, 387, 22 P.3d 124 (2001). However, "[t]he interpretation and legal effect of written instruments are matters of law, and an appellate court exercises unlimited review." *Unrau*, 271 Kan. at 763.

Lance's homeowner's policy provides personal liability coverage if a claim is made or a suit is brought against an insured for damages because of bodily injury caused by an "occurrence." The policy defines an occurrence as an accident. However, the policy excludes from coverage bodily injury actions that are either expected or intended by the insured or which are the result of willful and malicious acts of the insured.

According to Kansas case law, the insured's intent to injure can be inferred when the resulting injury is a natural and probable consequence of the insured's act. *Harris v. Richards*, 254 Kan. 549, 553, 867 P.2d 325 (1994). At the trial of the garnishment action, the trial court heard evidence that Lance picked Davin up nearly 5 feet off the ground and slammed him headfirst on the basketball court. Additionally, portions of Lance's deposition were read into the record. Although Lance denied that his actions were intended to injure Davin, Lance admitted that he had picked Davin up between the legs and "dropped him down." Later, Lance testified that he had "toss[ed] [Davin] to the side."

In *Harris*, the defendant fired two shotgun rounds into the back window of a pickup truck that he knew was occupied. The court held that the natural and probable consequence of the act is that

anyone occupying the cab would be injured. 254 Kan. at 553. In reaching its decision, the court disregarded the question of whether the defendant had the actual intent of harming both individuals in the truck and looked only to the natural and probable consequences of his actions. As in *Harris*, this court was required to ignore Lance's stated intent and focus on whether physical injury was the natural and probable consequence of picking Davin up and dropping him headfirst to the floor. It is clear that physical injury was the natural and probable consequence of such an act. Consequently, Lance's intent to injure can be inferred.

Based on the evidence presented to the trial court, there was substantial competent evidence to support the trial court's conclusion that Lance's actions were excluded from coverage under the State Farm policy.

Affirmed.